## STATE OF CONNECTICUT *v.* BOOKER T. TORRENCE
### (12537)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

After his conviction of the crimes of robbery in the first degree, possession of a sawed-off shotgun, assault in the third degree and kidnapping in the second degree had been affirmed by the Appellate Court, the defendant, on the granting of certification, appealed to this court. Because, as the Appellate Court held, it was not reasonably possible that the jury was misled by the trial court's erroneous references to superseded common law definitions of insanity in its instructions on the defendant's insanity defense, the Appellate Court's judgment was affirmed.

Scope of review by this court of Appellate Court decisions, discussed.

Scope of review of claim made under *State* v. *Evans* (165 Conn. 61), discussed.

Argued April 4—decision released June 11, 1985

*Jon C. Blue,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom were *John T. Redway,* state's attorney, and *Katherine J. Lambert,* for the appellee (state).

PETERS, C. J. This is an appeal, after certification, from a judgment of the Appellate Court affirming a conviction despite an inaccurate jury instruction on the statutory defense of insanity. In the trial court, the defendant, Booker T. Torrence, was convicted of three counts of robbery in the first degree in violation of General Statutes § 53a-134, one count of possession of a sawed-off shotgun in violation of General Statutes § 53-211, one count of assault in the third degree in violation of General Statutes § 53-61, and one count of kidnapping in the second degree in violation of General Statutes § 53a-94.[1] In his appeal to the Appellate Court, the defendant raised three claims of error, none of which the Appellate Court found persuasive. We granted certification to review the judgment of the Appellate Court that the trial court's instruction on insanity, although erroneous, was not so misleading as to require a reversal of the defendant's conviction. We affirm the judgment of the Appellate Court.

The decision of the Appellate Court fully describes the underlying facts. *State* v. *Torrence,* 1 Conn. App. 697, 699–700, 476 A.2d 598 (1984). The defendant was accused of participating in an armed robbery of a liquor store and of assaulting and robbing the owner of a house in which he subsequently hid. To the various charges brought against him, the defendant principally interposed the defense of insanity under General Statutes § 53a-13.[2] At trial, there was conflicting expert evidence about the defendant's mental health and his

---

[1] The defendant was also convicted of refusing to comply with police fingerprinting and identification procedures in violation of General Statutes §§ 29-11, 29-12 and 29-17. Judgment was suspended on this portion of the verdict.

[2] At the time the charged offenses were committed, General Statutes § 53a-13 provided: "INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental

capacity to conform his conduct to the requirements of the law. On the issue of insanity, the trial court instructed the jury not only on the statutory definition of insanity contained in § 53a-13 but also referred to superseded common law definitions of insanity derived from the M'Naghten test; *M'Naghten's Case,* 8 Eng. Rep. 718, 722 (1843); and the irresistible impulse test. The defendant did not except to these instructions when they were given.

The Appellate Court determined that the trial court's instructions on insanity were properly reviewable, despite the absence of a timely objection at trial.[3] That court held that the question of the propriety of the trial court's commingling of statutory and common law definitions of insanity raised an issue of constitutional dimension permitting review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). *State* v. *Torrence,* supra, 702–703.

On the merits, the Appellate Court held that the charge given by the trial court was in error. Relying upon our decisions in *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984), *State* v. *McCall,* 187 Conn. 73, 444 A.2d 896 (1982), and *State* v. *Toste,* 178 Conn. 626, 424

---

disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

General Statutes § 53a-12 provides: "DEFENSES; BURDEN OF PROOF. (a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt.

"(b) When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

Once the defendant raised the defense of insanity at trial, the state therefore had the burden of proving the defendant's sanity. Section 53a-13 has since been amended to shift this burden of proof by making insanity an affirmative defense. See Public Acts 1983, No. 83-486.

[3] The charge on insanity was not the only issue before the Appellate Court; see *State* v. *Torrence,* 1 Conn. App. 697, 708, 476 A.2d 598 (1984); but it is the only issue that is before this court. See text, pp. 433–34, and footnotes 4–5, infra.

A.2d 293 (1979), the Appellate Court decided that the trial court should not have injected into its charge on mental capacity elements of the M'Naghten and irresistible impulse tests, when those tests have been abolished by the governing statute. *State* v. *Torrence,* supra, 703. The court went on to conclude, however, that the trial court had not committed reversible error because, in view of the factual posture of the case, it was not reasonably possible that the jury had been misled. Id., 705–707.

The defendant's request to this court for certification raised a single question: "In a criminal case in which the Defendant's sanity was the only contested issue, was the trial court's erroneous inclusion of legislatively abandoned common law definitions of insanity in its charge on the issue harmless beyond a reasonable doubt?" We must determine whether the Appellate Court erred in its resolution of this question.

I

Before we address this question on the merits, it is important to comment briefly on the procedural posture of this case, because it represents our first appeal from the Appellate Court. In such an appeal, the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo. The only questions that we need consider are those squarely raised by the petition for certification, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court. See Practice Book § 3154;[4] cf. ABA Commission on Standards of Judicial Administration,

---

[4] Practice Book § 3154 provides in relevant part: "The issues which the appellant may present [to the supreme court on certification] are limited to those raised in the petition for certification . . . except where the issues are further limited by the order granting certification."

Standards Relating to Appellate Courts (approved draft 1977) § 3.14 and commentary.[5]

These observations necessarily have implications for our review of the question presented in this case. We decline the invitation of the state to consider whether improprieties in a charge on insanity are reviewable under *State* v. *Evans,* because the state so conceded in its brief to the Appellate Court, the Appellate Court so held, and the state has not filed a preliminary statement of issues in this court to revive this issue. See Practice Book § 3012 (a).[6] We likewise need not review the Appellate Court's determination that the charge as given was incorrect, because of the state's failure to raise this issue in a preliminary statement of issues. We address that issue only insofar as it is inescapably intertwined with the issue that is properly before us, the question of the harmfulness of the trial court's error.

II

Our analysis of the merits of the defendant's claim must begin with a discussion of the scope of the review

[5] We may, of course, suspend the limitation of Practice Book § 3154 for good cause shown. See Practice Book § 3164. In addition, under extraordinary circumstances, not present here, we may review matters not raised before the Appellate Court and resolve issues not determined by the Appellate Court. Cf. Practice Book § 3063.

[6] Practice Book § 3012 (a), made applicable to proceedings after certification by Practice Book § 3158, provides in relevant part: "If the appellee wishes to present for review alternate grounds upon which the judgment may be affirmed, or if he wishes to present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial . . . he may file a preliminary statement of issues within fourteen days from the filing of the appeal." An appellee who is aggrieved by the decision of the Appellate Court may file a cross petition for certification within ten days of the filing of the appellant's petition. Practice Book § 3141. Since the Appellate Court upheld the defendant's conviction, the state was not aggrieved within the meaning of § 3141 and properly did not seek to file a cross petition for certification. If the state wished to present alternate grounds for upholding the trial court's judgment, however, it should have filed an appellee's preliminary statement of issues pursuant to § 3012 (a).

afforded a claim made under *State* v. *Evans*. Once it has been established that the record adequately supports a claim that a defendant has clearly been deprived of a fundamental constitutional right and a fair trial; *State* v. *Evans,* supra, 70; the merits of the claim must be determined. Relying on our observation in *State* v. *Kurvin,* 186 Conn. 555, 564–65, 442 A.2d 1327 (1982), that "[a] claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather whether when reviewed in the context of the entire trial it violated some right guaranteed to the defendant by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut," the state contends that review of an *Evans* claim is narrower than that given a properly preserved fundamental constitutional claim. The state argues that the defendant's claim of error does not survive this limited review.

The state's argument mischaracterizes *Evans* review. Although only a very limited class of claims may be raised under *Evans;* see, e.g., *State* v. *Conroy,* 194 Conn. 623, 627 n.5, 484 A.2d 448 (1984) (inadequate record); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982) (no fundamental constitutional claim); resolution of those claims is governed by general rules of appellate review. Since an *Evans* claim by definition alleges a fundamental constitutional error, only certain rules are called into play and they are applied in the rarified context of such an allegation. There is, however, no separate set of substantive standards that produces lowered scrutiny of unpreserved claims of fundamental constitutional deprivation. When, as here, a jury instruction is challenged as not merely erroneous but

as constitutionally deficient in a fundamental respect, the challenge can succeed only if it is reasonably possible that the jury was misled by the instruction into misunderstanding an issue that has fundamental constitutional significance. See *State* v. *Smith,* 194 Conn. 213, 219–20, 479 A.2d 814 (1984); *State* v. *Kurvin,* supra, 558, 565, 569.

The defendant claims error in the instruction on the definition of insanity. The issue to be determined is therefore whether it is reasonably possible that the instruction undermined the jury's understanding of the statutory definition of insanity and prevented it from properly deciding that the defendant was sane at the time he committed the charged offenses. As with any challenge to a portion of a jury instruction, this analysis must be performed with reference to the instruction as a whole. "A charge to the jury is not to be 'critically dissected' nor are individual instructions to be judged in 'artificial isolation' from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978)." *State* v. *Derrico,* 181 Conn. 151, 171, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

The overall charge on the definition of insanity was as follows. First, the trial court read the statutory definition verbatim: "In any prosecution for an offense, it shall be the [sic] defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by a [sic] repeated criminal or otherwise anti-social conduct." The court repeated the full statutory definition a second time. After explaining to the jury how to relate the medical testimony on insanity to this definition, the

court then gave the instruction at issue: "The definition of insanity, or lack of capacity, would include a mind which is either so naturally weak or so impaired by disease or otherwise as to make its possessor incapable of distinguishing right from wrong. It would not include a mind which, while weak or incapable in some measure, is still sound enough to make an essential choice in the course of conduct." The court added: "A man of merely dull or diminished intellect would not necessarily be irresponsible within the meaning of the law." The court returned immediately, however, to the language of the statute in its concluding remarks: "The law stresses that the defendant must lack substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Substantial is defined as being considerable or large, not minor or trivial."

As the Appellate Court correctly held, the challenged portion of the charge erroneously injected elements of superseded common law doctrine into the definition of insanity. See *State* v. *Jones,* supra, 88; *State* v. *McCall,* supra, 86; *State* v. *Toste,* supra, 632. The references to incapacity to distinguish right from wrong and to being incapable to some degree, yet legally responsible, do not conform to the statutory definition that one who lacks *substantial* cognitive or volitional capacity is legally insane. These references therefore should not have been included in the charge.

We also agree with the Appellate Court, however, that the error of their inclusion was not harmful. Unlike the instruction in *Toste,* the erroneous language was used only once and was not repeated. In contrast to *McCall* and *Jones,* where the initial charge contained but a single rendition of the statutory definition, the instant charge repeated the exact words of § 53a-13 twice. Moreover, the trial court's concluding instruction that "[t]he law stresses that the defendant must

lack substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law'' immediately refocused the jury's attention on the key concept that sets the statutory definition apart from common law doctrine and, in effect, acted as a curative instruction. It is also relevant that while the erroneous remarks referred in part to the ability to distinguish right from wrong, the defendant presented expert testimony only on his lack of substantial capacity to conform his conduct to the requirements of the law. A faulty definition of cognitive insanity cannot prejudice a defendant who claims volitional insanity. Finally, the harmful impact of the initial instructions in *Toste* and *Jones* was indicated by the requests by both juries during deliberation for additional guidance on the meaning of insanity. See *State v. Jones,* supra, 85–86.[7] Here, however, the jury's silence suggests that the erroneous portion of the instruction did not create confusion or distract the jury from the correct standard. In sum, our careful examination of the charge as a whole reveals that it is not reasonably possible that the jury was misled by the trial court's mistaken reference to common law concepts.[8]

The judgment of the Appellate Court is affirmed.

In this opinion the other judges concurred.

---

[7] Because the jury in *State* v. *McCall,* 187 Conn. 73, 86, 444 A.2d 896 (1982), was reconvened and given a curative instruction on the definition of insanity once the trial court had been informed of its error, the jury had no occasion to ask for additional explanation.

[8] The state also argues that the use of common law standards was harmless because this error somehow inured to the defendant's benefit. We disagree. While it is true that the state bore the burden of disproving the defendant's claim of insanity; see footnote 2, supra; it would have been easier to disprove membership in the smaller common law class of the totally incapacitated than to disprove membership in the larger statutory class of those who are only substantially incapacitated.