## THEODORE LaCROIX *v.* BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT
### (12544)

PETERS, C. J., SHEA, SANTANIELLO, CALLAHAN and BRENNAN, Js.

Argued January 15—decision released March 11, 1986

*Paul E. Knag,* with whom, on the brief, was *Gregory B. Nokes,* for the appellant (defendant).

*Robert J. Malone,* for the appellee (plaintiff).

PETERS, C. J. The principal issue on this appeal after certification from a judgment of the Appellate Court is whether the trial court had jurisdiction to hear the plaintiff's claims that his contract of employment as a tenured teacher had been wrongfully terminated. The plaintiff, Theodore LaCroix, brought this action against the defendant board of education of Bridgeport (hereinafter the board) alleging that the board, in failing to follow the procedural requirements for termination

mandated by General Statutes § 10-151 (b),[1] the Teacher Tenure Act, violated his contract of employment and deprived him of his right to due process of law as guaranteed by article first, § 8, of the Connecticut constitution.[2] Following an appeal after trial, the Appellate Court found that the plaintiff's contract had never been legally terminated, and it ordered him reinstated with damages. We granted certification to review the judgment of the Appellate Court.

---

[1] At the time of the plaintiff's termination, General Statutes (Rev. to 1972) § 10-151 (b), since amended and reorganized as § 10-151 (d), provided: "EMPLOYMENT OF TEACHERS. NOTICE AND HEARING ON TERMINATION OF CONTRACT. . . . (b) Beginning with and subsequent to the fourth year of continuous employment of a teacher by a board of education, the contract of employment of a teacher shall be renewed from year to year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed, if no other position exists to which he may be appointed if qualified; or (6) other due and sufficient cause; provided, prior to terminating a contract, a board of education shall give the teacher concerned a written notice that termination of his contract is under consideration and, upon written request filed by such teacher with such board within five days after receipt of such notice, shall within the next succeeding five days give such teacher a statement in writing of its reasons therefor. Within twenty days after receipt from a board of education of written notice that contract termination is under consideration, the teacher concerned may file with such board a written request for a hearing, which such board shall hold within fifteen days after receipt of such request. Such hearing shall be public if the teacher so requests or the board so designates. The teacher concerned shall have the right to appear with counsel of his choice at such hearing, whether public or private. A board of education shall give the teacher concerned its written decision within fifteen days after such hearing, together with a copy of a transcript of the proceedings, which shall be furnished without cost. Nothing herein contained shall deprive a board of education of the power to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section."

[2] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Prior to trial, the plaintiff expressly withdrew a claim that his rights under the fourteenth amendment to the United States constitution had also been violated.

The underlying facts are not in dispute. In 1972, the plaintiff was a tenured teacher in the Bridgeport school system, having been employed as an elementary school physical education teacher since 1966. On June 21, 1972, the assistant superintendent of schools notified the plaintiff by letter that his contract was being terminated on June 23, 1972, because "all principals with whom you have worked have sent written notification that they find it impossible to communicate with you, and have you follow instructions and other due and sufficient causes . . . ." In response to this letter, the plaintiff, on July 10, 1972, hand-delivered to the board a written request for a hearing.[3] No hearing was held during the remainder of the summer, nor was the plaintiff given a teaching assignment when the new school year commenced in September. Subsequently, on October 16, 1972, before a hearing had been held, the board voted to approve the termination of the plaintiff's contract, effective June 30, 1972. Two days later, the board notified the plaintiff that the hearing he had requested in July would be held on October 26, 1972. On the advice of his retained counsel, the plaintiff did not attend this hearing.[4] Finally, in a letter dated October 31, 1972, the board notified the plaintiff that "termination of [his] services as a teacher in the Bridgeport School System [had] been taken under consideration

---

[3] The plaintiff delivered the following letter to the defendant board on July 10, 1972:

"Gentlemen:

"Please be advised that I am requesting in writing a hearing with the Board of Education regarding the termination of my contract as physical education instructor.

"I file this request within the twenty (20) days allowed me since my alleged termination.

"Very truly yours,
"Theodore LaCroix"

[4] The record does not indicate whether a hearing was held in the plaintiff's absence on October 26, 1972.

by the Board of Education at their last regular meeting on October 30, 1972." The letter informed the plaintiff of his right, upon written request, to a hearing or a statement of the reasons for the proposed termination. The plaintiff failed to make such a request or to respond to the board's letter in any way, nor did he appeal the board's decision to Superior Court as provided by General Statutes § 10-151 (f).[5] No further communications of record occurred between the parties until May, 1974, when the plaintiff filed the present lawsuit.

Following a trial without a jury, the trial court found that the board's initial attempt in June, 1972, to terminate the plaintiff's contract had been ineffective because it had failed to comply with the procedural requirements prescribed by General Statutes § 10-151 (b). However, the court found that the board's letter of October 31 had effectively reinitiated the statutory termination procedure and had resulted in a valid termination when the plaintiff failed to request a hearing.

[5] At the time of the plaintiff's termination, General Statutes (Rev. to 1972) § 10-151 (f) provided: "EMPLOYMENT OF TEACHERS. NOTICE AND HEARING ON TERMINATION OF CONTRACT. . . . (f) Any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (b) of this section may appeal therefrom, within thirty days of such decision, to the court of common pleas for the county or judicial district in which such board is located. Such appeal shall be made returnable to said court in the same manner as is prescribed for civil actions brought to said court. Any such appeal shall be a privileged case to be heard by the court as soon after the return day as is practicable. The board of education shall file with the court a copy of the complete transcript of the proceedings of the hearing held by the board for such teacher, together with such other documents, or certified copies thereof, as shall constitute the record of the case appealed from. The court, upon such appeal, shall review the proceedings of such hearing and shall allow any party to such appeal to introduce evidence in addition to the contents of such transcript, if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court, upon such appeal and after a hearing thereon, may affirm or reverse the decision appealed from. Costs shall not be allowed against such board unless it appears to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from."

On appeal, the Appellate Court reversed in part, holding that the initial procedurally defective June termination rendered ineffective the subsequent October 31 attempt by the board to terminate the plaintiff's contract in compliance with the procedural mandates of § 10-151 (b). *LaCroix* v. *Board of Education,* 2 Conn. App. 36, 39–42, 475 A.2d 1110 (1984). Consequently, the court ruled that, because the plaintiff's contract had never legally been terminated, he was entitled to reinstatement and damages dating from June, 1972. In reaching the merits of the plaintiff's claim, the Appellate Court rejected the defendant's challenge to the trial court's jurisdiction, holding that the plaintiff's failure to exhaust his administrative remedies and to bring an administrative appeal of the board's action, as provided by § 10-151 (f), did not preclude him from bringing an independent action to contest the termination of his contract.

We granted certification to review the judgment of the Appellate Court in respect to three issues: (1) whether the plaintiff was barred from bringing this action because of his failure to exhaust his administrative remedies as provided by § 10-151 (b) and (f); (2) whether the procedurally defective June termination rendered ineffective the board's subsequent October 31 termination attempt; and (3) whether the plaintiff is entitled to reinstatement "without regard to the grounds for or the merits of his termination," as well as to an award of "more than a decade's worth of back pay." Our resolution of the first two issues makes it unnecessary for us to consider the third.

It is important to note at the outset the analytical framework in which we consider these issues. Our focus of review is the action of the Appellate Court, not the action of the trial court. *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985); *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985). The Appellate

Court viewed the board's various actions from June through October, 1972, as components of one single termination attempt which was rendered invalid by the initial failure to follow prescribed statutory procedures. As we view the case, however, we conclude that the ramifications of the board's attempt to terminate the plaintiff's contract in June are significantly different from those which flowed from its attempt to terminate the contract in October. Accordingly, our consideration of the action of the Appellate Court will deal separately with the June termination and the October termination.

I

The Appellate Court made two crucial determinations with respect to the board's initial attempt to terminate the plaintiff's contract in June, 1972. It held, first, that the termination attempt was ineffective because it failed to comport with the procedures mandated by General Statutes § 10-151 (b), and second, that the plaintiff was entitled to judicial relief without having exhausted his administrative remedies under General Statutes § 10-151 (f) because, in its view, the plaintiff's "statutory appeal rights for wrongful termination did not preclude an action for breach of contract." *LaCroix* v. *Board of Education,* supra, 39. We disagree in part with the second of these holdings.

The Appellate Court was clearly correct in holding, as had the trial court, that the defendant board had failed to comply with the requirements of § 10-151 (b) in its June attempt to terminate the plaintiff's contract of employment. Under that subsection, before a tenured teacher's contract may be terminated, a board of education must: (1) give the teacher written notice that termination of his contract is "under consideration"; (2) provide a written statement of the reasons therefor within five days of a timely written request by the

teacher; and (3) provide a hearing, followed by a written decision, within fifteen days of a timely written request by the teacher. The defendant no longer contests the finding of noncompliance arising out of its failure to provide the plaintiff either notice that his termination was under consideration or a hearing within fifteen days of the plaintiff's timely request.

We do not, however, concur with the Appellate Court's broadly stated authorization for bypass of a tenured teacher's administrative remedies under § 10-151 (f). The Appellate Court, reading the plaintiff's complaint, as had the trial court, as an action for breach of a contract of employment, determined that such an action would lie regardless of available statutory rights of appeal. In arriving at this conclusion, the Appellate Court relied on our decisions in *Cahill* v. *Board of Education,* 187 Conn 94, 103, 444 A.2d 907 (1982) *(Cahill I),* and *Petrovich* v. *Board of Education,* 189 Conn. 585, 589, 457 A.2d 315 (1983). These cases do not permit a litigant to invoke common law contract remedies in complete disregard of available administrative relief.

In *Cahill I,* supra, the plaintiff, a tenured teacher, claimed that her assignment following her return from an approved sabbatical violated the terms of her contract. After an extended dispute between the parties, the board of education terminated the plaintiff's employment contract in accordance with the procedures prescribed by § 10-151. The plaintiff did not appeal this termination directly under § 10-151 (f), but subsequently brought a separate action alleging breach of contract both in the termination of her contract and in the board's failure to assign her to an appropriate position. Insofar as her law suit challenged her allegedly wrongful termination, we held that she was limited to the statutory appeal process provided by § 10-151 (f). In holding, in *Cahill I,* supra, 103, that "[t]o the extent

that the complaint alleged a breach of the agreement [by failing to assign her to the proper position], the court had jurisdiction to hear this case," we permitted direct judicial relief only with respect to matters totally outside of the remedial scope of § 10-151.

In *Petrovich* v. *Board of Education,* supra, a nontenured teacher brought a breach of contract action to challenge the nonrenewal of her contract. As a nontenured teacher, she had no statutory right under § 10-151 to appeal directly the termination or nonrenewal of her contract.[6] Consequently, we held that, in the absence of such a statutory right, the teacher was not precluded from bringing "an appropriate action for breach of contract." *Petrovich* v. *Board of Education,* supra, 589.

In the present case, the plaintiff, a tenured teacher, challenged only the wrongful termination of his contract. Since he was entitled to appeal this termination under § 10-151 (f), the cases relied upon by the Appellate Court provide no support for its holding on jurisdiction.

Contrary to the Appellate Court's decision, we have long adhered to the rule that, where a statutory right of appeal from an administrative decision exists, an aggrieved party may not bypass the statutory procedure and instead bring an independent action "to test the very issue which the appeal was designed to test." *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 685, 485 A.2d 1272 (1984); *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 543, 469 A.2d 382 (1983); *Powers* v. *Ulichny,* 185 Conn. 145, 147, 440 A.2d 885 (1981); *Connecticut Light*

---

[6] In 1983, General Statutes § 10-151 was amended to provide a statutory right of appeal to nontenured teachers under certain circumstances. See Public Acts 1983, No. 83-398.

& *Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979); *Astorita* v. *Liquor Control Commission,* 165 Conn. 185, 189, 332 A.2d 106 (1973). In this case, the plaintiff's challenge of the allegedly wrongful termination of his contract seeks to address the very issue which the appeal mechanism authorized by § 10-151 (f) was designed to test. In its holding that the plaintiff was in no way precluded from bringing a separate breach of contract action to challenge the June termination, the Appellate Court did not take sufficient account of this general rule of exhaustion of remedies.

Like any other general rule, the rule of exhaustion of administrative remedies is subject to some exceptions, although we have recognized such exceptions only infrequently and only for narrowly defined purposes. See *Cahill* v. *Board of Education,* 198 Conn. 229, 241–43, 502 A.2d 410 (1985) *(Cahill II)*; *Sullivan* v. *Board of Police Commissioners,* 196 Conn. 208, 216–17, 491 A.2d 1096 (1985); *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 94, 448 A.2d 210 (1982). One such narrow exception involves a constitutional challenge to the propriety of the procedures followed by the administrative agency or board. *Connecticut Light & Power Co.* v. *Norwalk,* supra, 117. Simply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process.[7] *Sullivan* v. *State,* 189 Conn. 550, 554, 457 A.2d 304 (1983); *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* supra, 96 n.6; *Garrow* v. *Elizabeth General Hospital & Dispensary,* 79

[7] Exhaustion of administrative remedies is generally not required when the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency. *Conto* v. *Zoning Commission,* 186 Conn. 106, 115, 439 A.2d 441 (1982); *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 490, 440 A.2d 185 (1981); *Friedson* v. *Westport,* 181 Conn. 230, 233, 435 A.2d 17 (1980).

N.J. 549, 561, 401 A.2d 533 (1979); *Kmiec* v. *Spider Lake*, 60 Wis. 2d 640, 645, 211 N.W.2d 471 (1973); see generally 4 Davis, Administrative Law Treatise (2d Ed.) § 26:8. Under some special circumstances, we have, however, permitted a collateral constitutional challenge to an administrative procedure even in the absence of a direct appeal. *Connecticut Light & Power Co.* v. *Norwalk,* supra.

In the present case, the plaintiff alleged that the defendant board violated his right to due process as guaranteed by article first, § 8, of the Connecticut constitution[8] by its failure to provide a hearing prior to, and for four months subsequent to, its June termination of his contract. As a tenured teacher with a statutory right to continued employment under § 10-151 (b), the plaintiff possessed a property right that was entitled to constitutional protection. *Cahill II,* supra, 240; *Lee* v. *Board of Education,* 181 Conn. 69, 71–72, 434 A.2d 333 (1980). This protection entitled the plaintiff, at a minimum, to notice and "[t]he opportunity to be heard at a meaningful time and in a meaningful manner." *Kukanskis* v. *Griffith,* 180 Conn.

[8] The plaintiff raised this due process claim before the Appellate Court, but that court found it unnecessary to reach it. *LaCroix* v. *Board of Education,* 2 Conn. App. 36, 40 n.3, 475 A.2d 1110 (1984). Although both parties briefed this issue extensively on this appeal, we note that the plaintiff did not file a preliminary statement of issues with this court under Practice Book § 3012 (a) raising the constitutional claim as an alternate basis for sustaining the Appellate Court's decision. Ordinarily, we would not consider an issue which had not been "squarely raised" either by the petition for certification or in a § 3012 (a) statement. *State* v. *Torrence,* 196 Conn. 430, 434 n.6, 493 A.2d 865 (1985). However, the question of the subject matter jurisdiction of the court may be raised at any time; Practice Book § 3110; *Neyland* v. *Board of Education,* 195 Conn. 174, 177, 487 A.2d 181 (1985); and must be acted on by the court "regardless of the form of the motion"; *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985); or the content of the pleadings. *Sullivan* v. *Board of Police Commissioners,* 196 Conn. 208, 213, 491 A.2d 1096 (1985). Consequently, we will consider the constitutional challenge in our determination of the jurisdiction of the court.

501, 509–10, 430 A.2d 21 (1980). The plaintiff therefore presented a colorable constitutional challenge to the defendant board's actions by his allegation that the board deprived him of due process in failing to schedule a hearing until months after the June termination.

We conclude that, under the specific circumstances of this case, the plaintiff's failure to follow the administrative appeal route to challenge the June termination did not preclude him from bringing a collateral judicial action to test this basic constitutional infirmity in the board's termination process. See *Friedson* v. *Westport,* 181 Conn. 230, 233, 435 A.2d 17 (1980); *Connecticut Light & Power Co.* v. *Norwalk,* supra, 117. Two circumstances lead us to this conclusion: the plaintiff's timely request for a hearing is evidence that he did not deliberately decide to bypass the statutory appeal route, and the defendant board's unwillingness to provide the hearing within the statutory period was a significant contributing factor in the plaintiff's failure to pursue a direct appeal. We can find neither constitutional nor statutory mandate to compel the plaintiff's attendance at the defendant board's untimely hearing scheduled for October 26. The defendant's total default relieved the plaintiff of the obligation to pursue further administrative steps, and permitted the plaintiff to invoke judicial remedies to vindicate his constitutional rights to due process. See *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Accordingly, we conclude that the trial court had jurisdiction to hear the plaintiff's constitutional challenge to the June termination.

Having decided that the trial court had jurisdiction to hear this due process claim, we need not address the merits of the claim itself. The defendant has challenged only the trial court's jurisdiction. It acknowledges that it did not file a cross appeal in the Appellate Court to challenge either the trial court's finding that the

June termination was invalid or its consequent award of back pay to the plaintiff for the 1972-73 school year.[9] We therefore affirm the award of damages to the plaintiff in the amount of $1470.64 plus interest and costs.[10]

## II

The Appellate Court viewed the board's second termination attempt, initiated by its letter of October 31, 1972, informing the plaintiff that his termination was *under consideration,* as a continuation of its initial invalid June action. It found that, since the plaintiff had already been illegally terminated and had not been reinstated, the October 31 letter was insufficient to restart the termination procedure mandated by § 10-151 (b), which requires notice *prior* to termination. Consequently, it held that the plaintiff's contract was never validly terminated. It also found that the plaintiff's failure to exhaust the administrative remedies provided by § 10-151 (b) and (f) did not deprive the trial court of jurisdiction to hear this action. We disagree and reverse.

The failure of a school board to comply with the procedural requirements of § 10-151 (b) in attempting to terminate the contract of a tenured teacher renders the termination ineffective. It does not, however, preclude a board from *reinitiating* the termination procedure in a manner which comports with the statutory

---

[9] In view of the defendant's acknowledged failure to appeal the trial court's judgment, we need not decide whether an award of a full year's back pay was appropriate.

[10] In computing the amount of damages due, the trial court subtracted the amount of the plaintiff's actual earnings for the year 1972-73 from the amount he was entitled to receive under his contract with the defendant. The plaintiff claims that the court's computation was incorrect, and asks us now to decide the proper method of computing damages. The plaintiff's similar request to the Appellate Court was denied, and the plaintiff failed to raise this claim in a preliminary statement of issues; Practice Book § 3012 (a); or in a cross petition for certification. Practice Book § 3141. We therefore decline to consider this claim.

mandates. Only recently we held in *Petrovich* v. *Board of Education,* supra, 588, that "[w]hether or not the board's [initial] action was legally efficacious to accomplish the intended result, the board was not precluded thereby from taking whatever measures it deemed necessary [to terminate the contract] for the ensuing years." Reinstatement of the teacher is not a prerequisite to such a renewed termination effort. We imposed no such prior reinstatement requirement on the board in *Petrovich* v. *Board of Education,* supra. The fact that the teacher in *Petrovich* was nontenured while the plaintiff in the present case was tenured is irrelevant to this issue.

In the present case, the June termination was ineffective because the defendant board had failed to give the plaintiff prior notice that his termination was being considered. This default for the school year 1972-73 did not, however, prevent the defendant from beginning the termination procedure anew in an attempt to comply with the statutory requirements of § 10-151 (b) for the year 1973-74 and thereafter. The defendant undertook this renewed termination effort with its letter of October 31, informing the plaintiff, in language which tracked the language of § 10-151 (b), that termination of his contract "[had] been taken under consideration by the Board of Education at their last regular meeting on October 30, 1972." This notice effectively reinitiated the termination process. The Appellate Court's failure to recognize the October 31 letter as the first step in a separate and distinct termination attempt was erroneous.

The Appellate Court further erred in holding that the plaintiff's failure to exhaust the administrative remedies available to him under § 10-151 (b) and (f) did not prove a jurisdictional bar to the present action challenging the efficacy of the October termination. "It is a settled principle of administrative law that, if an adequate

administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588, 424 A.2d 285 (1979); *Cahill II,* supra, 238–39; *Sullivan* v. *Board of Police Commissioners,* supra, 216; *Greenwich* v. *Liquor Control Commission,* supra, 541; *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* supra, 93; *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 357, 377 A.2d 1099 (1977); *McNish* v. *American Brass Co.,* 139 Conn. 44, 53, 89 A.2d 566 (1952), cert. denied, 344 U.S. 913, 73 S. Ct. 336, 97 L. Ed. 704 (1953). General Statutes § 10-151 (b) guarantees a tenured teacher the right to a hearing prior to termination in which the teacher can challenge the proposed board action, and § 10-151 (f) provides the right to a direct appeal from an unfavorable decision after the hearing. The plaintiff deliberately decided not to avail himself of these statutory means of redress. His failure to request a hearing and to pursue his available remedies is thus fatal to his present cause of action.

In contrast to the plaintiff's claim arising out of the June termination, his challenge to the October termination does not fall within one of the narrow exceptions to the exhaustion doctrine which we have recognized. The plaintiff relies on the principle that resort to administrative remedies is not required where the remedy is inadequate or futile. *Cahill II,* supra, 241; *Sullivan* v. *Board of Police Commissioners,* supra, 217. That principle is inapplicable in this case, because the hearing and appeal mechanisms provided by § 10-151 are designed to provide immediate consideration and review of the very issue of wrongful termination that the plaintiff raises in this action. The available statutory remedies thus adequately safeguard the plaintiff's rights. Furthermore, the statutory remedies are not

rendered futile by the plaintiff's conclusory assertion that requesting and attending a hearing before the defendant board would have been pointless in the face of the board's earlier decision to terminate his employment. *Cahill II,* supra, 241. Had the plaintiff requested and attended a hearing following the board's October 31 letter, he would have been able to raise the issue of lack of impartiality in an administrative appeal. "By not appearing before the board, the plaintiff not only deprived the defendant board of the opportunity to hear, analyze and review a matter within its responsibility and expertise, but also deprived [him]self of the opportunity to put on [his] case and to make a proper record on which to seek judicial relief in the event [he] was terminated." *Cahill II,* supra, 241–42. These two exceptions, therefore, do not excuse the plaintiff's failure to follow the statutory course.

The failure to pursue available administrative remedies has also been excused, under special circumstances discussed more fully in part I, when a constitutional challenge to the propriety of the administrative action has been brought. The plaintiff's due process attack on the October 31 termination, however, does not present a colorable constitutional claim. In attempting to establish a violation of due process, the plaintiff argues that his property rights in his tenured position were unconstitutionally implicated by the defendant board's renewal of its effort to terminate his employment in October and by the defendant board's failure thereafter to give him formal notification of the termination of his contract. We disagree that either of these claims requires direct judicial action in derogation of established statutory procedures.

The due process rights of a tenured teacher are well defined and not controverted in the present case. As a matter of constitutional law, the plaintiff was entitled to (1) notice of the fact of and the alleged reasons for

his proposed termination, (2) an opportunity for a meaningful hearing to contest the termination, and (3) a written statement of the decision reached, the reasons for the determination, and a summary of the evidence relied upon. *Lee* v. *Board of Education,* supra, 76–79; *Kukanskis* v. *Griffith,* supra, 509–10. With respect to the October termination, the plaintiff was afforded these rights by the defendant board and by the administrative processes of § 10-151 (b). The plaintiff admittedly received notice of the contemplated termination, and was offered the opportunity to be informed of the reasons underlying the proposed action and to receive a hearing before the board. He declined both of these offers. We have already noted that his allegation that the board would not have given him a fair hearing is on the one hand both speculative and unsupported by any evidence, and on the other hand administratively cognizable. His further complaint that he was never informed of the actual termination also lacks merit. Having failed to avail himself of the opportunity for a hearing, the plaintiff could well be deemed to have waived any due process right to a written statement of the outcome of the hearing. In any event, the plaintiff received notice in fact about his termination when he was made aware of the defendant board's refusal to assign him to a teaching position. On this record of intentional inaction on the part of the plaintiff and communication in fact on the part of the defendant, the plaintiff has not made out a colorable claim of constitutional deprivation.

In the absence of a colorable claim of a constitutional violation, the plaintiff has failed to establish a persuasive basis for permitting him to pursue a direct judicial remedy rather than an administrative appeal. We note, however, that the absence of special circumstances attending the plaintiff's October 31 termination might have required exhaustion of administrative

remedies even if his constitutional claim had been colorable. *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority*, supra, 96; *Connecticut Light & Power Co.* v. *Norwalk*, supra, 117. Furthermore, direct judicial adjudication even of constitutional claims is not warranted when the relief sought by a litigant "might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore." *Sullivan* v. *State*, supra, 559. In short, the plaintiff's failure to avail himself of the remedies available to him pursuant to § 10-151 deprived the trial court of jurisdiction to consider his challenge to the October 31 termination.

The Appellate Court was therefore in error in failing to recognize that the trial court lacked jurisdiction to determine the validity, in a direct judicial action, of the defendant board's October termination of the plaintiff. Because of this jurisdictional lacuna, the Appellate Court should have refrained from inquiry into whether the board's actions, beginning with its October 31 letter to the plaintiff, properly invoked the mechanisms of § 10-151 (b) and effectuated a valid termination of the plaintiff's contract. *Neyland* v. *Board of Education*, 195 Conn. 174, 177, 487 A.2d 181 (1985). Consequently the Appellate Court lacked the authority to order further remedial relief for the plaintiff in the form of reinstatement and additional damages for his termination for the school years subsequent to 1972-73.

The judgment of the Appellate Court is reversed in part and the case is remanded with direction that the judgment of the trial court is to be reinstated in its entirety.

In this opinion the other judges concurred.