[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Stuart Melnick, asks this court to grant a temporary injunction enjoining the defendant, Statewide Grievance Committee (SGC), from proceeding against him. The SGC has moved to dismiss the action because Melnick has failed to exhaust the remedies provided by the grievance procedure.
The facts of this case are not materially disputed. Melnick is a member in good standing of the Bar of the State of Connecticut. On March 16, 1994, James Shannon made a complaint to the SGC. This complaint accused Melnick of engaging in a conspiracy to extort and intimidate him by filing a lawsuit concerning Shannon's dog. In his verified complaint to this court, Melnick alleges that Shannon's complaint to the SGC was libel per se.
On March 23, 1994, Melnick wrote to Shannon demanding that he retract the allegedly false statements that Shannon made in his complaint to the SGC and advising Shannon that a civil action would be brought against him if he did not do so.[1]
On April 7, 1994, as promised, Melnick filed a lawsuit against Shannon. That lawsuit alleged that by filing a grievance against him, Shannon was liable for abuse of process, defamation, vexatious litigation, and intentional or reckless or negligent infliction of emotional distress. Thereafter, Shannon filed a second grievance against Melnick. This grievance was filed with the local panel of the SGC. CT Page 6488
On May 18, 1994, the local panel found that the first grievance lacked probable cause. The local panel did not address the second grievance. On August 18, 1994, a reviewing subcommittee of the SGC also found that Shannon's first grievance lacked probable cause. This reviewing subcommittee, however, sua sponte determined that probable cause existed to support Shannon's second grievance. The reviewing subcommittee was comprised of one attorney and one non-attorney.
A public hearing was scheduled for January 11, 1995.[2] Two days before the hearing, Melnick filed this verified complaint seeking, inter alia, to enjoin the public hearing from convening. Melnick has also sought a declaratory judgment with respect to the legality of the SGC's actions.[3]
The SGC has filed a motion to dismiss claiming that this court lacks subject matter jurisdiction because Melnick has failed to exhaust his administrative remedies. "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter.LaCroix v. Board of Education, 199 Conn. 70, 83-84,505 A.2d 1233 (1986), quoting Connecticut Mobile Home Assn., Inc. v.Jensen's, Inc., 178 Conn. 586, 588, 424 A.2d 285 (1979). Furthermore, [b]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiffs' claim. . . . [W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings. (Citations omitted; internal quotation marks omitted.) Concerned Citizens of Sterling v.Sterling, 204 Conn. 551, 556-57, 529 A.2d 666 (1987)." (Internal quotation marks omitted.) Polymer Resources, Ltd. v. Keeney,227 Conn. 545, 557, 630 A.2d 1304 (1993). "`The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review.' (Citation omitted; internal quotation marks omitted.) Concerned Citizens of Sterling v. Sterling, 204 Conn. 551,557, 529 A.2d 666 (1987). Moreover, resolution of the issues at the administrative level may render judicial review CT Page 6489 unnecessary. See Housing Authority v. Papandrea, 222 Conn. 414,420-21, 610 A.2d 637 (1992)." Id., n. 20.
However, "the statewide grievance committee is not an administrative agency. . . ." Weiss v. Statewide GrievanceCommittee, 227 Conn. 802, 811, 633 A.2d 282 (1993). It "is an `arm of the court' and is not a body in which the legislature has reposed general powers of administration of a particular state program with which it has been given statutory authority to act for the state in the implementation of that program."Sobocinski v. Statewide Grievance Committee, 215 Conn. 517, 526,576 A.2d 532 (1990).
"Although the statewide grievance committee is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to and administrative agency." Weiss v. Statewide Grievance Committee,
supra, 227 Conn. 810. Practice Book § 27N(a), adopted to govern appeals from decisions of the statewide grievance committee, provides: "A respondent may appeal to the superior court a decision by the statewide grievance committee reprimanding the respondent." Practice Book § 27N(f) provides: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment."[4] These "provisions are so similar to the provisions of General Statutes § 4-183 of the UAPA that many of the same principles of law apply to appeals of the Committee's decisions." Barrett v. Statewide Grievance Committee, Superior Court, Judicial District of Hartford-New Britain at Hartford, No. 519143 (1993) (Maloney, J.); Laviano v. Statewide GrievanceCT Page 6490Committee, Superior Court, Judicial District of Danbury, No. 30L586 (1993) (Koletsky, J.). Many of the same principles underlying the doctrine of administrative remedies apply to actions brought against the Statewide Grievance Committee. Although exhaustion may not always be applied as strictly to such actions, since the court may entertain them without doing violence to the will of the legislature, a principle underpinning of the doctrine of exhaustion; United States v.Ruzicka, 329 U.S. 287, 290, 67 S.Ct. 207, 91 L.Ed. 290 (1946);Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50,58 S.Ct. 459, 82 L.Ed. 638 (1938); United States v. Sing Tuck,194 U.S. 161, 167, 24 S.Ct. 621, 48 L.Ed. 917 (1904); the doctrine is applicable here.
"There are some exceptions to the exhaustion doctrine, `although we have recognized such exceptions only infrequently and only for narrowly defined purposes. Pet v. Department ofHealth Services, 207 Conn. 346, 353, 542 A.2d 672 (1988), quoting LaCroix v. Board of Education, supra, [199 Conn.] 79. We have recognized that a party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: recourse to the administrative remedy would be futile or inadequate; Greenwich v. LiquorControl Commission, 191 Conn. 528, 541-42, 469 A.2d 382 (1983); the procedures followed by the administrative agency are constitutionally infirm; LaCroix v. Board of Education, supra; or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm; Pet v. Department ofHealth Services, supra, [207 Conn.] 370." (Internal quotation marks omitted.) Polymer Resources, Ltd. v. Keeney, supra,227 Conn. 561.
Melnick has advanced a panoply of reasons why this court should enjoin the SGC from proceeding, reminiscent of those cases in which the supreme court has cautioned that " [l]egal contentions, like the currency, depreciate through over-issue." (Internal citations and quotation marks omitted.) State v.Pelletier, 209 Conn. 564, 567, 552 A.2d 805 (1989). Suffice it to say that the lionshare of his claims do not fall within the ambit of the narrow exceptions which our appellate courts have "grudgingly carved" out of exhaustion doctrine. Labbe v. PensionCommission, 229 Conn. 801, 812, 643 A.2d 1268 (1994).
Melnick suggests four ways in which the reviewing subcommittee acted improperly in a procedural manner: (a) only CT Page 6491 one attorney and one person who is not an attorney constituted the reviewing subcommittee that found probable cause, (b) the reviewing subcommittee acted on a matter not before it, (c) the SGC improperly handled Shannon's second grievance, and (d) the reviewing subcommittee rendered a determination of law. While Melnick's claim that the reviewing subcommittee acted on a matter not it before does raise a substantial question, a scrutiny of the merits of each claim does not convince the court that this is a case where the statutory grievance procedure may be or ought to be by-passed.
Nor does the denial of Melnick's application result in irreparable injury to him as a result of the public disclosure of the grievance filed against him, under the current state of the law. Cf. Waterbury Teachers Assn. v. Freedom of InformationCommission, 230 Conn. 441, 448-450, 645 A.2d 978 (1994).[5] While this is unfortunate, in Connecticut in recent years such disclosures have not been attended by much, if any, publicity.
Melnick may not by this civil action by-pass the grievance procedure even though this court finds that, as a matter of law, there was no probable cause for the second grievance against him. The two-person subcommittee found probable cause that Melnick's letter to and lawsuit against Shannon was intended to disrupt the SGC in violation of Rule 3.5(c) of the Rules of Professional Conduct[6] and that they were prejudicial to the administration of justice under Rule 8.4(d).[7] The SGC's attorney has represented to the court that the subcommittee found probable cause based on (1) Melnick's bringing a lawsuit against Shannon for abuse of process, defamation, vexatious litigation, and tortious infliction of emotional distress in light of Chester v. Wiley, Superior Court, Judicial District of Hartford-New Britain at Hartford, No. 374862 (1991 Ct. Sup. 5159) (1991), and (2) the "tone" of Melnick's letter to Shannon which preceded the commencement of that lawsuit.
With respect to the first basis for the finding of probable cause, it is so that in Chester v. Wiley, supra, the superior court (M. Hennessey, J.) held that an action for defamation or negligent infliction of emotional distress may not be predicated on the defendant's statements made during a grievance proceeding or on the filing of the grievance itself. These, the court held, were absolutely privileged. Subsequent to Melnick's filing a lawsuit against Shannon, the holding in Chester v. Wiley was reiterated in Field v. Kearns, Superior Court, Judicial District CT Page 6492 of Fairfield, No. 3001282 (14 Conn.L.Rpts. No. 1, 35 (1995) (stating that "the public policy of protecting the courts and the public from unethical and unprofessional attorneys is so strong that there is absolute immunity for the complainant in filing or otherwise causing the institution of attorney disciplinary proceedings"), appeal pending, AC No. 14689. "Trial court cases, however, do not establish binding precedent. J.M.Lynne Co. v. Geraghty, 204 Conn. 361, 369, 528 A.2d 786 (1987)."Statewide Grievance Committee v. Presnick, 18 Conn. App. 316, 323n. 3, 559 A.2d 220 (1989).[8] Since the causes of action asserted in Melnick's lawsuit are well-settled at common law, they do not, without more, give rise to a violation of the Code of Professional Responsibility.
As for Melnick's letter to Shannon; see note 1, supra; that document was unremarkable, reflected Melnick's understandable outrage and anger, yet fairly comported with the requirement that a plaintiff seeking other than actual damages demand a retraction before commencing an action for libel. General Statutes § 52-237.[9]
Notably, "Rule 3.5(c) requires that any conduct be accompanied by an intention to disrupt." ABA/BNA Lawyers' Manual on Professional Conduct, p. 61:901. The standard of conduct violative of this rule "would seem most likely to be met by conduct held to constitute criminal contempt." Id., p. 61:902. Nothing which Melnick has done has remotely approached such conduct. Rule 8.4(d)'s "proscription against conduct that is prejudicial to the administration of justice has been criticized by some commentators as too broad in scope, see Weckstein,Maintaining the Integrity and Competence of the LegalProfession, 48 Tex. L. Rev. 267, 275-76 (1970); as insufficient to give fair notice to lawyers, see Sutton, How Vulnerable isthe Code of Professional Responsibility?, 57 N.C.L.Rev. 497, 502n. 13 (1979); and as leaving open the possibility that lawyers will be disciplined [as here] because of unorthodox or politically unpopular conduct or views, see Comment, ABA Code ofProfessional Responsibility: Void for Vagueness?, 57 N.C.L. Rev. 671, 685 (1979)." Id., p. 101:503. While the courts have generally upheld these provisions against attacks of unconstitutional vagueness and overbreadth, "[i]n some cases, courts have refused to find that conduct was prejudicial to the administration of justice where there was no showing that a lawyer actively interfered with a civil or criminal proceeding. [citations omitted.]." Id., p. 101:502. Even in those CT Page 6493 jurisdictions which have found misconduct under a broader interpretation of Rule 8.4(d), no case has been cited to or found by the court in which a violation was upheld based on facts even remotely analogous to those here. Id., p. 101:503.
It is difficult not to conclude that, in bringing a lawsuit against another member of the same condominium complex in which he lived[10] albeit on behalf of another resident, then suing Shannon after the latter's grievance had been found to lack probable cause, Melnick was "looking for trouble." The State-Wide Grievance Committee, however, is not empowered to provide it, but to determine whether there has been attorney misconduct.
The defendant's motion to dismiss is granted.
BY THE COURT
Bruce L. Levin Judge of the Superior Court