SUSANE O. GRASSO *v.* CONNECTICUT
HOSPICE, INC., ET AL.
(AC 33489)

Beach, Alvord and Bear, Js.

Argued April 23—officially released October 23, 2012

*Burton M. Weinstein*, with whom, on the brief, was *Patricia A. Cofrancesco*, for the appellant (plaintiff).

*Ian E. Bjorkman*, with whom was *William A. Ryan*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Susane O. Grasso, appeals from the summary judgment rendered by the trial court in favor of the defendants, Connecticut Hospice, Inc. (Hospice), and Rosemary J. Hurzeler, Ronny J. Knight, David R. Goldfarb, Sandra J. Klimas, Susan Flannigan, Nancy Baranowski and Michael Sweeney (individual defendants).[1] On appeal, the plaintiff claims that the court improperly concluded that there was no genuine issue of material fact as to her claims (1) in contract, that Hospice breached the employee handbook and the settlement agreement, and (2) in tort, that the individual defendants were liable for both negligent infliction of emotional distress and intentional infliction of emotional distress. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. The plaintiff was an employee of Hospice from 1998 until April, 2010. In 2009, she filed two complaints against Hospice with the federal Occupational Safety and Health Administration (administration) relating to defective chairs in the workplace. The administration ordered Hospice to repair any defective chairs. The

---

[1] The individual defendants are officers and employees of Hospice.

plaintiff claims that, in retaliation for filing the complaints, her work environment became hostile, she was subjected to relentless pressure to quit her job and her work duties changed. The plaintiff filed a complaint with the administration's whistle-blower protection program, claiming retaliation and discrimination. In October, 2009, the administration determined that there existed reasonable cause that a violation of the whistle-blower statute had occurred.

On January 27, 2010, Hospice and the plaintiff entered into a settlement agreement (agreement) with regard to the whistle-blower claim. The agreement stated that the plaintiff would work part-time in Hospice's Branford and Shelton offices, that she would bring what she needed to complete her daily tasks with her to these locations and that she released Hospice from future claims resulting from events preceding the execution of the agreement. Approximately one week after the plaintiff signed the agreement, she sent notice to Hospice that it had breached the agreement. Hospice was unresponsive, so the plaintiff notified the administration of the alleged breach. The administration informed the plaintiff that it was unable to enforce the agreement and advised her to seek a venue for enforcement of the agreement if she thought that Hospice had breached it.

On July 16, 2010, the plaintiff filed a six count complaint in Superior Court alleging (1) violation of the state whistle-blower statute, General Statutes § 31-51m, (2) violation of the first amendment to the United States constitution and article first, §§ 3, 4 and 14, of the Connecticut constitution, (3) breach of the settlement agreement, (4) breach of Hospice's employee handbook, (5) negligent infliction of emotional distress and (6) intentional infliction of emotional distress.[2] The

---

[2] The plaintiff does not appeal from the judgment rendered on counts one and two of the complaint.

defendants filed counterclaims alleging that the release of claims provision of the agreement (release provision) released the defendants from liability with respect to the claims alleged in all six counts of the plaintiff's complaint. The defendants filed a motion for summary judgment on the six counts of the plaintiff's complaint and on their counterclaims seeking declaratory relief.

The parties argued the summary judgment motion on March 28, 2011. In a memorandum of decision filed April 28, 2011, the court, *Burke*, *J.*, determined that there was no genuine issue of material fact as to any of the six claims and rendered summary judgment in favor of the defendants on the six counts of the complaint. With respect to the counterclaims, the court concluded that the release provision barred the plaintiff's claims in the first, second and fourth counts of the complaint, and therefore rendered summary judgment in favor of the defendants with regard to those counts. This appeal followed.

On appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendants because a genuine issue of material fact existed with respect to the language of the agreement and the circumstances surrounding the termination of her employment and her treatment in the workplace. She argues that Hospice and the individual defendants violated the clause of the settlement agreement that stated that the agreement would "not provide [the plaintiff] any greater or lesser rights or privileges than other employee[s] of Hospice." She also argues that the release provision does not bar her breach of contract claim with regard to the employee handbook. Finally, the plaintiff argues that the individual defendants' specific acts in the month following the signing of the settlement agreement caused her severe emotional distress, amounting to a constructive termination of employment.

We first set forth the applicable legal principles. "The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings." (Internal quotation marks omitted.) *Rockwell* v. *Quintner*, 96 Conn. App. 221, 227, 899 A.2d 738, cert. denied, 280 Conn. 917, 908 A.2d 538 (2006). "Thus, because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary . . . ." (Citation omitted; internal quotation marks omitted.) *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 572–73, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006).

I

The first set of claims asserted by the plaintiff on appeal concerns acts by Hospice that she alleges constituted a breach of the employee handbook and the agreement. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]. . . .

"Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms. A court will not torture words

to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [written instrument] must emanate from the language used in the [writing] rather than from one party's subjective perception of the terms. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 7–8, 35 A.3d 177 (2011). We agree with the sound conclusion of the trial court that the agreement is unambiguous. Our review of the agreement is therefore plenary. *Cruz* v. *Visual Perceptions, LLC*, 136 Conn. App. 330, 334, 46 A.3d 209, cert. granted on other grounds, 306 Conn. 903, 52 A.3d 730 (2012).

A

The plaintiff first claims that there is a genuine issue of material fact regarding whether the release provision barred a claim against Hospice for a breach of the employee handbook, as alleged in count four of the complaint. We determine that this claim is moot.

The following procedural history is relevant to our discussion of this claim as to the provisions of the employee handbook. After the plaintiff filed her six count complaint, the defendants filed answers, special defenses and counterclaims, including requests for attorney's fees. The defendants' counterclaims alleged that all six counts of the plaintiff's complaint were barred because the release provision insulated Hospice from any future liability for acts performed prior to the execution of the agreement. The trial court agreed in part and rendered summary judgment in favor of the defendants, inter alia, on the plaintiff's claim of a breach of the employee handbook. Significantly, the court also rendered summary judgment in favor of the defendants on their counterclaims with regard to the alleged breach of the employee handbook.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When . . . events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Brown* v. *Brown*, 69 Conn. App. 209, 211–12, 794 A.2d 550 (2002).

Though the plaintiff did appeal from the trial court's rendering of summary judgment that the release provision barred the alleged breach of the employee handbook, the plaintiff did not appeal from the trial court's rendering of summary judgment on the defendants' counterclaims that the release provision in the agreement bars liability. The plaintiff has two different rulings against her with regard to the issue of the breach of the employee handbook because the trial court rendered summary judgment in favor of the defendants on both the claim and the counterclaim, but the plaintiff appealed from only one such ruling. Because the trial court's rendering of summary judgment on the counterclaim is not before us, this court would not be able to grant the plaintiff any practical relief regarding the defendants' alleged breach of the handbook. We therefore do not review this claim.

B

The plaintiff next claims that there is a genuine issue of material fact regarding whether Hospice breached the agreement, as alleged in count three of the complaint. We disagree.

"A settlement agreement is a contract among the parties." (Internal quotation marks omitted.) *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009). The relevant section of the agreement provides: "This Agreement shall not and does not constitute an employment contract for a definite term and [the plaintiff's] employment with Hospice shall remain subject to all of Hospice's policies, practices, procedures and rules. Moreover, the settlement agreement will not alter, in any way, [the plaintiff's] status as an at-will employee of Hospice. The settlement agreement will not provide [the plaintiff] any greater or lesser rights or privileges than other employee[s] of Hospice."

The plaintiff focuses on the provision that the agreement does not provide the plaintiff with any *greater or lesser rights or privileges.* She argues that this language indicates an agreement that she would have treatment equivalent to all other employees of Hospice, and that Hospice breached the agreement by failing to provide her with a key to the office when every other worker in the Shelton office had a key. The plaintiff further argues that Hospice's treatment of her was unequal because she was the only employee in the Shelton office who did not have either a computer on her desk or a portable computer, making her the only director or staff member who had to record all work by hand. Under the agreement, however, the plaintiff was assigned only two six hour days per week in the Shelton office, and much of her time on those days was spent traveling, and, thus, out of the office.

The defendants argue that Hospice did not intend to bind itself to providing identical workplace accommodations to every employee, regardless of the time the

employee spent in the office or the duties the employee performed. In support of this argument, they urge this court to consider the "greater or lesser rights or privileges" clause within the agreement and not in isolation. We agree with the defendants that, when examining the clause in context, the parties' intent was that the agreement would neither confer any at-will employment rights that did not exist prior to the agreement, nor would it remove any at-will employment rights that did exist prior to the agreement. The trial court therefore properly determined that the agreement did not dictate that every Hospice employee was entitled to the exact same treatment with regard to duties, office accommodations or access to the workplace.

## II

The second set of claims asserted by the plaintiff on appeal concerns acts by the individual defendants, subsequent to the signing of the agreement, which allegedly caused her emotional distress. As a preliminary matter, we determine that the plaintiff's claims that the court improperly rendered summary judgment on her causes of action for negligent infliction of emotional distress and for intentional infliction of emotional distress were inadequately briefed. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 353, 913 A.2d 480 (2007). "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Krondes* v. *O'Boy*, 37 Conn. App. 430, 436, 656 A.2d 692 (1995).

The section of the plaintiff's brief devoted to the negligent infliction of emotional distress claim is five

sentences long, contains no case citations and does not address the fundamental basis of the trial court's rationale. The section of the plaintiff's brief devoted to intentional infliction of emotional distress is four sentences long, and, while it does contain a case citation, there is no analysis of why the case presented is applicable. Furthermore, the plaintiff's brief contains no application of facts to the elements of intentional infliction of emotional distress. Nevertheless, had the claims been briefed adequately, we still would conclude that the trial court properly rendered summary judgment as to those counts of the complaint.

The following additional facts are relevant to the plaintiff's claims of negligent infliction of emotional distress and intentional infliction of emotional distress. In 2008, the plaintiff was involved in a motor vehicle accident that was not work related and left her hospitalized for one month with fractured ribs, a broken pelvis and a punctured lung. She suffered from post-traumatic stress disorder (stress disorder) that rendered her incapable of driving long distances. The plaintiff was discharged from stress disorder treatment in March, 2009, after her condition improved, but she reported that her symptoms returned in July, 2009. In October, 2009, after filing the three reports with the administration, the plaintiff was reassigned from telemarketing duties in the Shelton office to training duties in various locations throughout the state. The driving occasioned by the reassignment caused her stress. The change in the plaintiff's job description was memorialized in the January 27, 2010 agreement, which stated that the plaintiff would divide the four, six hour days per week she worked between the Branford and Shelton offices.

On February 10, 2010, the plaintiff was scheduled to be in Greenwich at 2:30 p.m. to give a presentation as part of her work duties with Hospice. She was late due to a prior work obligation, and despite calling her

supervisor three times within the next hour to inform her that she was stuck in traffic and that it was pointless to continue driving because she was going to miss the presentation, the supervisor told her to continue to Greenwich. She arrived in Greenwich at 3:15 p.m. and sat in her car shaking and crying from the long commute. When the plaintiff entered the facility, the person in charge of the Greenwich Hospice informed her that the presentation had ended and observed that the plaintiff looked upset. A nurse from Hospice examined the plaintiff in the lobby.

The plaintiff worked for six days after the February 10, 2010 incident. On February 24, 2010, the plaintiff presented Hospice with a letter written by her physician, recommending that the plaintiff refrain from long and stressful drives at work because driving exacerbated her stress disorder. A similar letter, dated March 15, 2010, and written by a different physician, was presented to Hospice along with a request that Hospice allow the plaintiff to receive workers' compensation benefits. On March 2, 2010, Hospice sent the plaintiff a letter explaining that it could not accommodate the plaintiff's driving induced stress by returning her to her previous position, as she had requested, because her previous position no longer existed. Hospice suggested that the plaintiff could qualify for certain benefits under the Family and Medical Leave Act (act), General Statutes § 31-51kk et seq., because she was unable to perform an essential function of her job. Hospice reiterated these suggestions to the plaintiff in letters dated March 10 and 23, and April 2, 2010. In a letter sent by the plaintiff to Hospice dated April 9, 2010, she threatened to file with the state insurance commissioner a complaint against Hospice if it did not comply with her previous demand that she receive subsidized medical

benefits[3] rather than the benefits program provided by the act.[4]

A

The plaintiff first claims that there is a genuine issue of material fact regarding whether the individual defendants could be found liable for negligent infliction of emotional distress. We disagree.

To prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003). "[N]egligent infliction of emotional distress in the employment context arises only when it is based upon unreasonable conduct of the defendant in the termination process . . . ." (Internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 750, 792 A.2d 752 (2002). An individual "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." Id., 762–63.

The plaintiff argues that the individual defendants engaged in negligent conduct sufficient to meet the four

---

[3] The benefits referenced by the plaintiff's letter are available only after the employment relationship is severed.

[4] The plaintiff attempted to recover unemployment benefits, and the administrator of the unemployment compensation act ruled that the plaintiff's separation from her employment was nondisqualifying. Hospice appealed, and the appeals referee found, after a de novo review, that the plaintiff had resigned from her position at Hospice. He further found that the plaintiff was entitled to benefits because she was forced to resign after it was determined that she suffered from a medical condition that prevented her from performing an essential function of her job.

elements of negligent infliction of emotional distress. She further contends that her employment was constructively terminated due to an inhospitable workplace. As support for this claim, the plaintiff relies on the decision of the employment security review appeals referee, who allowed her to collect unemployment benefits. The plaintiff claims that constructive termination is sufficient to meet the termination requirement set forth in *Perodeau*. We are not persuaded.

The trial court held that constructive termination did not satisfy the termination requirement for a negligent infliction of emotional distress claim in an employment context, relying on a Superior Court case, *Michaud* v. *Farmington Community Ins. Agency*, Superior Court, judicial district of Hartford, Docket No. CV-01-0806951 (September 25, 2002) (33 Conn. L. Rptr. 206). While we are not bound by the Superior Court's decision in *Michaud*, we choose to follow its sound rationale in our analysis of this case. "[T]he language of *Perodeau* itself is restrictive. The holding is phrased narrowly: the tort is maintainable only for 'conduct occurring in the termination of employment.' Language such as conduct in the 'discharge process' is not used; such language perhaps would contemplate a more expansive time frame. Conduct justifying the termination, or, on the other hand, compelling the resignation, is not itself the actual termination. Termination means ending, not the conduct which causes the ending." Id.

As the court in *Michaud* noted, the language used in *Perodeau* is supported by policy rationales that buttress the finding that termination must be a condition precedent to a negligent infliction of emotional distress claim in the employment context. Specifically, our Supreme Court in *Perodeau* determined that "individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace."

*Perodeau* v. *Hartford,* supra, 259 Conn. 757. The court also was aware that ensuring every employee's contentment, so as to ameliorate the threat of lawsuit, potentially could stifle productivity. Id., 758. The court concluded that because of the "inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress, extending the tort of negligent infliction of emotional distress to ongoing employment relationships would open the door to spurious claims." Id.

Both the Supreme Court's language and its policy rationales in *Perodeau* regarding the termination requirement indicate that termination is distinct from events that occur over the course of the employment relationship. The plaintiff alleges that her employment was constructively terminated due to a series of events occurring during her employment. The events that occurred, regardless of their impact on her decision to resign from her position at Hospice, do not satisfy the termination requirement set forth in *Perodeau.* The trial court therefore properly held that the plaintiff could not prevail on her claim for negligent infliction of emotional distress.

B

The plaintiff next claims that there is a genuine issue of material fact regarding whether the individual defendants could be liable for intentional infliction of emotional distress. We disagree.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3)

that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." (Citation omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Id., 210–11.

The plaintiff alleges that she suffered emotional distress as a result of harassment and humiliation, denial of supplies she required to perform her job and forced excessive commuting. The plaintiff claims that she was forced to drive hundreds of miles unnecessarily, including a commute made to Greenwich on February 10, 2010, that caused her emotional distress.[5] The plaintiff further alleges that the individual defendants conspired

---

[5] The plaintiff also describes another distressing commute she made from Shelton to Waterbury in whiteout conditions, only to find no record of an appointment made by her supervisor when she arrived. This commute occurred, however, prior to the agreement, and is therefore subject to the release provision.

to engage in a pattern of harassment and infliction of emotional distress that put her under relentless and severe pressure to quit her job. She claims that the individual defendants did this in order to ingratiate themselves with the upper levels of the chain of command at Hospice.

We determine that the court correctly held that there was no genuine issue of material fact that the individual defendants' actions were not extreme and outrageous. A vindictive conspiracy to terminate a plaintiff's employment, even if true, would not necessarily be sufficient to state a claim for intentional infliction of emotional distress. *Gillians* v. *Vivanco-Small*, 128 Conn. App. 207, 213, 15 A.3d 1200 (allegations that defendant coworkers, motivated by personal vendetta, conspired to create hostile work environment that included falsely accusing plaintiff of racial and sexual bias and giving plaintiff negative performance evaluations were insufficient to state claim of intentional infliction of emotional distress), cert. denied, 301 Conn. 933, 23 A.3d 726 (2011). This court has determined that defendants who harassed, intimidated, defamed and then disciplined a plaintiff without proper investigation did not engage in conduct that was extreme and outrageous. *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 569, 922 A.2d 280 (affirming trial court's granting of defendants' motion to strike because allegations, when read in light most favorable to plaintiff, did not rise to level of extreme and outrageous conduct), cert. denied, 284 Conn. 910, 931 A.2d 935 (2007). Furthermore, the agreement indicated that the plaintiff would be driving as part of her job, and that she would have to bring her own materials to work with her in Branford and Shelton. In light of these two provisions of the agreement, the trial court concluded properly that it was not extreme and outrageous behavior to deprive the plaintiff of office equipment or to require her to

drive. Accordingly, the plaintiff's claim of intentional infliction of emotion distress fails to meet the threshold for extreme and outrageous conduct with regard to any of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.