******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATALIA SIDOROVA *v.* EAST LYME
BOARD OF EDUCATION ET AL.
(AC 36506)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Argued March 4—officially released August 4, 2015*

(Appeal from Superior Court, judicial district of New
London, Devine, J.)

*Robert T. Rimmer*, for the appellant (plaintiff).

*David S. Monastersky*, with whom, on the brief, was
*Alexandria L. Voccio*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Natalia Sidorova, appeals from the summary judgment rendered in favor of the defendants, the East Lyme Board of Education (board) and the town of East Lyme (town), in this action arising out of the termination of the plaintiff's employment. On appeal, the plaintiff claims that the trial court erred in determining that (1) she lacked standing to pursue a breach of contract claim alleging violation of the provisions of the collective bargaining agreement (agreement) between the board and the East Lyme Teachers' Association, (2) governmental immunity applied to the superintendent's conduct in terminating the plaintiff, which conduct the court found to be discretionary, and (3) the plaintiff had failed to allege sufficient facts in support of her claims that the defendants breached their duties of good faith and fair dealing. We affirm the judgment of the trial court.

The following facts as either alleged in the complaint or undisputed by the parties are relevant to this appeal. The plaintiff was employed by the board as a French teacher in the East Lyme public school system. She was first hired as a substitute teacher in January, 2003, and she obtained tenure in 2007. In 2009, the high school's principal, John Sullivan, told the plaintiff that she most likely would be transferred to the middle school the following year. Following that discussion, a town budget referendum was passed that necessitated school staff layoffs. On June 8, 2009, the plaintiff was called to Sullivan's office, and the superintendent of schools, Paul Edward Smotas, handed her a letter dated June 4, 2009. In the letter, he notified the plaintiff that her position had been eliminated and, thus, that her employment had been terminated. She was not provided advance notice that her contract was under consideration for termination, and thus she had no opportunity to discuss the termination prior to its taking effect.

The following procedural history is also relevant. On June 16, 2010, the plaintiff filed the present action against the defendants. The operative complaint, the fourth amended complaint, most recently was amended on June 3, 2013, and contained twelve counts. Counts one through four alleged breach of contract,[1] counts five and six alleged intentional infliction of emotional distress, counts seven and eight alleged negligent infliction of emotional distress, and counts nine through twelve alleged breach of the covenant of good faith and fair dealing. On June 27, 2013, the defendants filed a revised answer and special defenses. The defendants subsequently filed a motion for summary judgment accompanied by a memorandum of law, attached to which were a number of documents, including excerpts of the deposition transcripts of the plaintiff, Sullivan, Smotas, and James D. Lombardo, the successor superintendent. Also attached were, among other documents,

the June, 2009 termination letter and the agreement. The plaintiff filed an objection to the defendants' motion for summary judgment, which was accompanied by a memorandum of law.[2] The defendants filed a reply memorandum, and the court heard oral argument.

On January 21, 2013, the court issued its memorandum of decision granting the defendants' motion for summary judgment as to all counts of the plaintiff's complaint. As to counts one through four, the court determined that the plaintiff lacked standing to enforce the provisions of the agreement. As to counts five and six, the court concluded that the defendants were entitled to immunity from liability pursuant to General Statutes § 52-557n (a) (2) (A),[3] and that, even if such immunity were unavailable, there was no genuine issue of material fact as to whether the defendants' conduct was extreme or outrageous as required to support a claim for intentional infliction of emotional distress.[4] As to counts seven and eight, the court concluded that Smotas' conduct in terminating the plaintiff's employment was discretionary, such that the defendants were entitled to immunity from liability pursuant to § 52-557n (a) (2) (B).[5] Addressing counts nine through twelve, the court determined that there was no genuine issue of material fact as to whether the defendants had engaged in a bad faith impediment of the plaintiff's rights as required to support the claims for breach of the implied covenant of good faith and fair dealing. It is from this judgment that the plaintiff appeals.

"We begin with the relevant standard of review concerning motions for summary judgment. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary. . . .

"[Practice Book § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45]." (Citation omitted; inter-

nal quotation marks omitted.) *Jahn* v. *Board of Education*, 152 Conn. App. 652, 657, 99 A.3d 1230 (2014).

## I

The plaintiff first claims that the court erred in granting the defendants' motion for summary judgment as to counts one through four because it improperly concluded that she lacked standing to bring a direct action for breach of contract against the defendants. Specifically, she argues that "it would be incongruous for a party to be penalized for not exhausting an administrative remedy process to which the party had received no notice nor meaningful opportunity in which to participate."[6] She further argues that the court improperly relied upon precedent involving claims that did not implicate General Statutes § 10-151 and that the court should have denied summary judgment based on the law of the case.[7] We disagree.[8]

The trial court granted the defendants' motion for summary judgment as to counts three and four after concluding that the plaintiff lacked standing to pursue a breach of contract claim alleging a violation of Article VII of the agreement.[9] The court explained: "Absent a contrary provision or the union's failure to adequately represent its members, individual union members do not have standing to enforce provisions of a collective bargaining agreement entered into by a municipality and a labor union." Because the plaintiff could not identify any provision of the agreement granting her the right to enforce the agreement, and because she did not allege that the union had breached its duty of fair representation, the court concluded that she lacked standing. As to counts one and two, the court concluded that, to the extent that those counts alleged a direct action against the defendants for their failure to comply with the statutory provisions of § 10-151, that statute provided no such private right of action other than through the administrative appeal process provided therein.[10]

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, 226 Conn. 704, 717, 629 A.2d 333 (1993).

Our Supreme Court previously has articulated the rules of standing applicable to employees seeking to pursue breach of contract actions based on alleged violations of collective bargaining agreements. "Ordi-

narily a court may entertain a suit by an individual employee to enforce the terms of a collective bargaining agreement only if the agreement so provides. . . . An employee does, however, have standing to enforce the terms of a collective bargaining agreement if the employee claims that the union has breached its duty of fair representation." (Citation omitted.) *Labbe* v. *Pension Commission*, 239 Conn. 168, 182, 682 A.2d 490 (1996).

On appeal, the plaintiff in the present case fails to identify any provision in the agreement permitting her individually to enforce Article VII or any other provision of the agreement. Moreover, she fails to allege that the union has breached its duty of fair representation. Rather than claiming that the present action satisfies one of the exceptions discussed previously, the plaintiff instead argues that the general principles of standing for unionized employees do not apply to teachers who receive protection under § 10-151, commonly known as the Teacher Tenure Act. She claims that "Connecticut courts have routinely allowed direct actions to be brought pursuant to . . . § 10-151 under certain circumstances, most notably where the employer, itself, has failed to follow the procedures set forth in . . . § 10-151."

We find it helpful to review the language of the statute. Section 10-151 (d) provides in relevant part: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons . . . (5) elimination of the position to which the teacher was appointed . . . if no other position exists to which such teacher may be appointed if qualified . . . and provided further that determination of the individual contract . . . of employment to be terminated shall be made in accordance with . . . a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization . . . ." Section 10-151 (d) further provides in relevant part: "Prior to terminating a contract, the superintendent shall give the teacher concerned a written notice that termination of such teacher's contract is under consideration and give such teacher a statement of the reasons for such consideration of termination. Not later than ten calendar days after receipt of written notice by the superintendent that contract termination is under consideration, such teacher may file with the local or regional board of education a written request for a hearing. . . ."[11] Section 10-151 (e) provides the right of appeal to the Superior Court to any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d).

We next turn to the case law cited by the plaintiff in support of her claim that the defendants' failure to

follow the statutory procedure results in her being permitted to bring a direct action. "[A]ccess to the courts under the Teacher Tenure Act is possible only on appeal of a decision of the board of education.  . . .  Our Supreme Court, however, has permitted the filing of separate actions against boards of education for breach of contract *under limited circumstances*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Drahan* v. *Board of Education*, 42 Conn. App. 480, 491, 680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996).

The plaintiff first relies on *Tomlinson* v. *Board of Education*, supra, 226 Conn. 707, a case in which a teacher's employment was terminated as part of a workforce reduction. The board had followed the statutory procedures, and the plaintiff had requested and received a public hearing before a single member panel, the decision of which the plaintiff appealed to the Superior Court. Id., 711–12. On appeal, our Supreme Court held that "[i]mplicit in [the] right to contest the termination [through a hearing], is the right to enforce the tenured teacher's underlying contract of employment. Indeed, it is only by virtue of the employment contract that the tenured teacher has any rights at all under § 10-151 (d)." Id., 721. We agree with the defendants that *Tomlinson* does not provide support for the plaintiff's claim that a direct action is permissible, because *Tomlinson* involved the statutory administrative appeal contemplated by § 10-151.

The plaintiff additionally cites *LaCroix* v. *Board of Education*, 199 Conn. 70, 73, 505 A.2d 1233 (1986), a case in which a tenured teacher received notification in June that his employment would be terminated two days later, and although he made a written request for a hearing, one was not held. In October, the board voted to approve his termination, effective the prior June, and then notified him that on October 26 they would hold the requested hearing, which he did not attend. Id. Next, the board notified the plaintiff in a letter dated October 31 that his termination had been under consideration by the board at its last meeting, and informed him of his right, upon written request, to a hearing or a statement of the reasons for the proposed termination. Id., 73–74. The plaintiff made no such request nor did he respond to the board's letter, and he did not appeal the board's decision to the Superior Court. Id., 74. Instead, the plaintiff brought a direct action against the board alleging violation of his contract of employment and deprivation of his right to due process of law as guaranteed by article first, § 8, of the Connecticut constitution. Id., 71–72. The court concluded that the plaintiff had "presented a colorable constitutional challenge to the defendant board's actions by his allegation that the board deprived him of due process in failing to schedule a hearing until months after the June termination." Id., 81.

Under the specific factual circumstances of *LaCroix*, our Supreme Court recognized an exception to the doctrine of exhaustion of administrative remedies and held that "the plaintiff's failure to follow the administrative appeal route to challenge the June termination did not preclude him from bringing a collateral judicial action to test this basic constitutional infirmity in the board's termination process." Id. The court concluded that the board's "total default relieved the plaintiff of the obligation to pursue further administrative steps, and permitted the plaintiff to invoke judicial remedies to vindicate his constitutional rights to due process."[12] Id. A review of the *LaCroix* decision reveals that our Supreme Court's determination that the trial court had jurisdiction in that case was limited to the narrow exception available for constitutional due process challenges. See id., 81 ("[W]e conclude that the trial court had jurisdiction to hear the plaintiff's constitutional challenge to the June termination. Having decided that the trial court had jurisdiction to hear this due process claim, we need not address the merits of the claim itself."). The plaintiff in the present case does not allege a violation of her constitutional right to due process, and thus her reliance on *LaCroix* is misguided.

The remaining cases cited by the plaintiff likewise do not support her position. In *Cahill* v. *Board of Education*, 187 Conn. 94, 103, 444 A.2d 907 (1982), although the plaintiff was permitted to bring a direct action alleging breach of contract against the board, the plaintiff's allegations included that the board had breached the agreement by "failing to restore [the plaintiff] to a position of like nature, seniority, status and pay after she returned from her sabbatical leave . . . ."[13] (Internal quotation marks omitted.) Our Supreme Court in *LaCroix* recognized the effect of *Cahill* as limiting a plaintiff's ability to bring a claim alleging wrongful termination to the statutory appeal process provided by §10-151, while permitting "direct judicial relief only with respect to matters *totally outside* of the remedial scope of § 10-151." (Emphasis added.) *LaCroix* v. *Board of Education*, supra, 199 Conn. 77–78; see also *Mendillo* v. *Board of Education*, 246 Conn. 456, 467, 717 A.2d 1177 (1998) (applying an exception to the doctrine of exhaustion of administrative remedies where the administrative remedy would be futile or inadequate to a case in which the "issues in controversy between the plaintiff and the defendants are not the issues contemplated by a termination hearing held pursuant to § 10-151 [d]").

In *Petrovich* v. *Board of Education*, 189 Conn. 585, 586, 457 A.2d 315 (1983), also cited by the plaintiff, a nontenured teacher's employment was terminated. She was informed by letter on August 14 that her position had been eliminated, and subsequently was informed by letter on August 30 that her employment had been

terminated. Id., 586–87. After a formal hearing, her termination was ratified. Id., 587. She filed an action for declaratory judgment and a mandatory injunction, and judgment was rendered awarding her back pay for the first school year following her termination. Id., 586. The defendant challenged the plaintiff's right to judicial review, and our Supreme Court concluded that she was not precluded from bringing an action for breach of contract. Id., 589. Subsequently, our Supreme Court in *LaCroix* distinguished *Petrovich* on the ground that "[a]s a nontenured teacher, she had no statutory right under § 10-151 to appeal directly the termination or nonrenewal of her contract." *LaCroix* v. *Board of Education*, supra, 199 Conn. 78. It further clarified the reach of *Petrovich* as holding that, "in the absence of such a statutory right, the teacher was not precluded from bringing an appropriate action for breach of contract." (Internal quotation marks omitted.) Id.

In applying the relevant case law to the facts of the present case, we conclude that this case does not fall within those limited circumstances under which our Supreme Court has permitted the filing of a direct action against boards of education and towns. The court properly concluded that the plaintiff lacked standing individually to enforce the provisions of the agreement, as she failed to identify any provision in the agreement permitting her individually to enforce the agreement, and she failed to allege that the union had breached its duty of fair representation. Moreover, the plaintiff did not allege a violation of her constitutional right to due process. Accordingly, the court did not err in rendering summary judgment as to counts one through four.

## II

The plaintiff next claims that the court erred in rendering summary judgment as to counts seven and eight, in which counts she alleged negligent infliction of emotional distress.[14] The plaintiff contends that the defendants' communication of the decision to terminate her employment was a ministerial function, rather than a discretionary function and therefore the court improperly rendered summary judgment on the basis of governmental immunity pursuant to § 52-557n. Specifically, the plaintiff argues: "Pursuant to [certain provisions of] the agreement,[15] the [board] holds the responsibility for determining if and when to discharge a teacher. The superintendent merely holds the responsibility of notifying the teacher of dismissal. Pursuant to *Bonington* [v. *Westport*, 297 Conn. 297, 999 A.2d 700 (2010)], even if the board's decision to discharge were considered discretionary, the mere notification of dismissal by the superintendent is the epitome of a ministerial function." (Footnote added.) The defendants contend that the court properly concluded that the decision concerning how to terminate an employee is discretionary, and, thus, the defendants were entitled to governmental

immunity. We agree with the defendants.[16]

We begin with the principles of governmental immunity. "[Section] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. . . . [Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Edgerton* v. *Clinton*, 311 Conn. 217, 229, 86 A.3d 437 (2014). "The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318, 907 A.2d 1188 (2006).

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." *Swanson* v. *Groton*, 116 Conn. App. 849, 855–56, 977 A.2d 738 (2009).

The plaintiff cites only *Bonington* and provisions of the agreement[17] in support of her claim that the communication of her termination was a ministerial function. In *Bonington*, our Supreme Court considered whether certain acts of the defendant town were discretionary or ministerial. *Bonington* v. *Westport*, supra, 297 Conn. 307. Those acts included "checking to see whether required permits and forms have been obtained and filed, inspecting and accurately reporting the result of inspections for zoning violations and enforcing clear violations of zoning regulations . . . ." Id., 308. In concluding that such acts were discretionary, the court

stated: "[E]ven when the duty to respond to a violation of law is ministerial because that specific *response* is mandated, the predicate act—determining whether a violation of law exists—generally is deemed to be a discretionary act. A ministerial duty on the part of an official often follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial." (Emphasis in original; internal quotation marks omitted.) Id., 309.

The court in *Bonington* relied on *Grignano* v. *Milford*, 106 Conn. App. 648, 658, 943 A.2d 507 (2008), in which this court found ministerial the duty to warn invitees of known hazards because the ordinance in question prescribed the *manner* in which the warning was required to be issued. The court noted that "[t]he form of the warning, i.e., by posting a notice or fence or barricade and by lighting the hazard at night, as well as the timing of the warning, i.e., immediately upon discovery of the unsafe condition and until necessary repairs are made, are set forth explicitly in the ordinance." Id., 658; cf. *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 272, 41 A.3d 1147 (2012) (maintenance of road, drains and storm sewers discretionary because tax district bylaws did not "prescribe the specific manner in which the duty to maintain and repair the roads, drains and storm sewers is to be performed").

In the present case, the plaintiff claims only that the manner of communication of the termination was ministerial.[18] She expressly states in her principal appellate brief that "[t]he plaintiff's negligent infliction of emotional distress claims rest upon the manner in which the termination was communicated to her rather than upon the termination itself." Cf. *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 397, 400, 955 A.2d 107 (2008) (concluding that it did not matter how the officer performed the duty to vacate the warrant, as the issue was not "whether the *procedure* to vacate the warrant was mandatory, but whether it was mandatory to vacate the warrant" [emphasis in original]). The agreement mandates no specific form or timing for the communication of a termination. It does not prescribe the manner in which the superintendent must communicate the termination to the teacher. It merely provides that dismissal of teachers is a responsibility of the superintendent. Thus, we agree with the court's conclusion that the superintendent's manner of communicating the plaintiff's termination was a discretionary act to which municipal immunity attached, and the court appropriately granted summary judgment as to counts seven and eight.[19]

III

The plaintiff last claims that the court erred in granting the defendant's motion for summary judgment as to counts nine through twelve of her complaint. She claims that the court improperly concluded that she had presented no evidence to support the cause of action of breach of the covenant of good faith and fair dealing and that the trial court made a factual "determination that the facts supporting this claim were insufficient. . . . This decision should have been reserved for the trier of fact." The defendants respond that the court correctly concluded that there was no genuine issue of material fact because the plaintiff failed to present evidence of or even allege bad faith on the part of the defendants. We agree with the defendants.

"To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. . . . Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382 (2004). "Absent allegations and evidence of a dishonest purpose or sinister motive, a claim for breach of the implied covenant of good faith and fair dealing is legally insufficient." *Alexandru* v. *Strong*, 81 Conn. App. 68, 81, 837 A.2d 875, cert. denied, 268 Conn. 906, 845 A.2d 406 (2004).

The plaintiff's complaint is devoid of any factual allegation that the defendants acted in bad faith. Counts nine and ten alleged, inter alia, that "the plaintiff's termination from employment by the defendants was wrongful and constituted a breach of its implied covenant of good faith and fair dealing by dismissing the plaintiff without first giving her notice that her contract was under consideration for termination and affording her the right to a hearing under applicable law and as required by contract between the parties." Counts eleven and twelve alleged, inter alia, breach of the implied covenant of good faith and fair dealing "when, pursuant to the requirements of Article VII of the agreement, others should have been laid off before the plaintiff." The plaintiff, however, fails to set forth any factual allegations that the defendants "committed a fraud, sought to mislead or deceive the plaintiff, acted with an improper motive, or . . . with a dishonest purpose." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 132 Conn. App. 85, 100–101, 30 A.3d 38 (2011), aff'd, 311 Conn. 123, 84

A.3d 840 (2014).[20] Thus, the court correctly concluded that there was no genuine issue of material fact and the defendants were entitled to summary judgment as to counts nine through twelve.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Counts one through four alleged that the town and the board each "breached its contract with the plaintiff and violated the plaintiff's rights under the agreement and under applicable Connecticut General Statutes . . . ."

Counts one and two alleged that the defendants failed to comply with General Statutes § 10-151, the provisions of which the plaintiff claimed were incorporated into the agreement, in that they failed to provide her with written notice that her contract of employment was under consideration for termination and failed to provide her with an opportunity to be heard at a hearing prior to her termination. The trial court construed these counts as sounding in breach of contract in denying the defendants' motion to strike. For purposes of summary judgment, however, the plaintiff argued that these counts were direct actions against the defendants for failure to comply with § 10-151.

Counts three and four alleged that the defendants terminated the plaintiff when, pursuant to Article VII of the agreement, others should have been terminated before her.

[2] The plaintiff attached to her memorandum additional excerpts of the deposition transcripts and other documents.

[3] General Statutes 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[4] On appeal, the plaintiff does not challenge the summary judgment rendered as to counts five and six.

[5] See footnote 3 of this opinion.

[6] "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . This requirement reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment." (Internal quotation marks omitted.) *Ridgefield Housing Authority* v. *Ridgefield Water Pollution Control Authority*, 131 Conn. App. 251, 259, 26 A.3d 150 (2011).

We note that the court, in rendering its summary judgment, did not base its decision on the plaintiff's failure to exhaust her administrative remedies. It expressly stated: "Judge Martin ruled [when denying the defendants' motion to dismiss] that the plaintiff was not required to exhaust the administrative remedies established by [General Statutes] § 10-151 in light of the defendants' failure to comply with the statute. . . . Yet, regardless of that exception, the plaintiff must still prosecute a recognized legal cause of action and have standing to do so." (Citation omitted.)

[7] The plaintiff references a November 25, 2011 order of the court, *Martin, J.*, denying the defendants' motion to dismiss, and a January 18, 2013 order of the court, *Devine, J.*, denying in part the defendants' motion to strike. Both motions related to prior versions of the operative complaint. She argues that the law of the case doctrine should have resulted in the denial of the defendants' motion for summary judgment on similar bases.

"The law of the case doctrine expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case . . . . As this court recently explained, the law of the case doctrine does not preclude a judge from deciding an issue in a way contrary to how it was decided by a predecessor judge in the same case. . . . [It] provides that judges may treat a prior ruling as the law of the case if they agree with the determination. He or she may, however, decide the issue differently if he or she is convinced that the prior decision is wrong."

(Citation omitted; internal quotation marks omitted.) *Sullivan* v. *Thorndike*, 137 Conn. App. 223, 227–28, 48 A.3d 130 (2012).

"A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Internal quotation marks omitted.) *Bridgeport* v. *Triple 9 of Broad Street, Inc.*, 87 Conn. App. 735, 741, 867 A.2d 851 (2005).

Moreover, motions to dismiss or strike are distinct from motions for summary judgment. "A trial court applies different principles and a different analysis when ruling on a motion to dismiss as opposed to a motion for summary judgment." *Henderson* v. *Lagoudis*, 148 Conn. App. 330, 339, 85 A.3d 53 (2014); *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 120, 891 A.2d 106 (2006) ("[w]hereas a motion to dismiss is decided only on the allegations in the complaint and the facts implied from those allegations, summary judgment is decided by looking at *all* of the pleadings, affidavits and documentary evidence presented to the court in support of the motion" [emphasis in original]); see also *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 565–66, 922 A.2d 280 ("a motion to strike will be denied if the allegations of the complaint, if proven, would support a cause of action"), cert. denied, 284 Conn. 910, 931 A.2d 935 (2007). Therefore, the circumstances of this case render inapplicable the doctrine of the law of the case. See *Henderson* v. *Lagoudis*, supra, 341.

[8] The defendants also contend that the judgment should be affirmed on the alternative ground that there existed no genuine issue of material fact regarding whether the defendants breached the agreement. In light of our resolution of the plaintiff's claim, we need not reach the defendants' alternative ground for affirmance.

[9] Article VII, entitled "Reduction in Staff," sets forth the policy and procedures governing elimination of staff positions, including the order in which staff members would be subject to layoff.

[10] Although the plaintiff titled and at times argued to the trial court that these counts alleged breach of contract, the trial court also analyzed them as a direct action under § 10-151. See footnote 1 of this opinion. We review both theories accordingly.

[11] It is undisputed that the defendants did not provide the plaintiff with notice that termination of her contract was under consideration. Although the plaintiff incorporated the lack of notice into each count of her complaint, she did not raise a claim that the board deprived her of due process by failing to provide her with notice that the termination of her contract was under consideration.

[12] See also *Tomlinson* v. *Board of Education*, supra, 226 Conn. 730 n.19 ("We have . . . permitted a plaintiff to bring a collateral judicial action where the plaintiff did not deliberately bypass the statutory appeal route and the defendant school board failed to provide a timely hearing. . . . Under such circumstances, we held that the school board's 'total default' relieved the plaintiff of the obligation to pursue further administrative steps, and permitted the plaintiff to invoke judicial remedies to vindicate his constitutional rights to due process.").

[13] With respect to the argument of the defendant in *Cahill* that the plaintiff had failed to exhaust administrative remedies, the court noted that the agreement's provisions for a grievance procedure did not extend to teacher transfers, and, thus, the plaintiff's "only remedy for contesting the defendant's decision to transfer her was the court process." *Cahill* v. *Board of Education*, supra, 187 Conn. 103–104.

[14] "To prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." (Internal quotation marks omitted.) *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 771, 54 A.3d 221 (2012). "[I]n cases where the employee has been terminated, a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress. The dispositive issue in each case [is] whether the defendant's conduct during the termination process was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." (Emphasis omitted; internal quotation marks omitted.) *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 571, 922 A.2d 280, cert. denied, 284 Conn. 910,

931 A.2d 935 (2007).

[15] The plaintiff cites three provisions of the agreement in support of her claim. First, she cites Article III, section L, paragraph 1, which provides in relevant part: "Unless expressly limited by this [a]greement, the exclusive functions and rights of the [b]oard include, but are not restricted to, the right to . . . discipline, suspend or discharge teachers . . . ."

The plaintiff second cites Article VII, section B, which provides in relevant part: "It is recognized that the [board] has the sole and exclusive prerogative to eliminate certified staff positions consistent with the provisions of the state statutes. Elimination of certified staff positions may result from decreases in student enrollment, changes in curriculum, severe financial conditions, or other circumstances as determined by the [board]."

The plaintiff third cites Article IV, section E, which provides: "The recruitment, hiring, and notification of dismissal of teachers is the responsibility of the [s]uperintendent of [s]chools."

[16] The defendants also contend that the judgment should be affirmed on the alternative ground that there existed "no genuine issue of material fact regarding whether the defendants engaged in unreasonable conduct during the termination process." In light of our resolution of the plaintiff's claim, we need not reach the defendants' alternative ground for affirmance.

[17] The plaintiff claims that the superintendent's ministerial duty to communicate the termination is created by the agreement. The defendants question whether a collective bargaining agreement can create a ministerial duty, noting that the plaintiff cites no authority for the proposition that it can. The trial court assumed, without deciding, that a collective bargaining agreement can create a ministerial duty and addressed the issue of whether the manner of notification was discretionary or ministerial. Without deciding that preliminary point, we address the ultimate issue because the trial court addressed it and it was briefed by the parties. See *Cumberland Farms, Inc.* v. *Zoning Board of Appeals*, 74 Conn. App. 622, 631 n.8, 814 A.2d 396, cert. denied, 263 Conn. 901, 819 A.2d 836 (2003).

[18] The plaintiff sets forth in her brief additional alleged facts in support of her claim of negligent infliction of emotional distress. She claims that when she was called to Sullivan's office and handed her termination letter, there were others present in the room, including the assistant principal, two union representatives, and "three or four persons whose identities were not known" to the plaintiff. Additionally, she claims that, during that meeting, Smotas "refused to answer her questions regarding her rights as a tenured teacher or her other options as a tenured teacher." Lastly, she alleges that, "[a]s a result of being paraded in front of this room of people and given a notice of termination without access to her statutorily and contractually guaranteed right to a pretermination hearing, [the plaintiff] was caused to suffer insomnia, depression and anxiety disorder."

[19] The plaintiff also references a July 6, 2012 order by the court, *Martin, J.*, denying the defendants' motion to strike a previously amended complaint. The previous denial of the defendants' motion to strike did not preclude the court from rendering summary judgment in favor of the defendants as to those counts. See footnote 7 of this opinion.

[20] In her appellate brief, the plaintiff primarily relies on her argument that the determination as to whether a party has acted in bad faith is a question of fact, and thus summary judgment was inappropriate. Summary judgment is proper, however, where the plaintiff has failed to allege facts to support its cause of action. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 97, 100–101 (affirming granting of summary judgment rendered in favor of the defendants where the plaintiff failed to include factual allegations of bad faith); *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 52, 19 A.3d 215 (2011) (affirming granting of summary judgment rendered in favor of the defendants where the plaintiff failed to demonstrate evidence of bad faith). Moreover, the court, *Devine, J.*, had previously stricken, for "not set[ting] forth any [supporting] factual allegations," two counts of a previously amended complaint, which were almost identical to counts nine and ten of the operative complaint.